# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL EVERETT, ) | |
| ) | |
| Plaintiff, ) | Case No. 19-cv-2345 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| NORTHERN RECEPTION ) | |
| CLASSIFICATION CENTER, WARDEN ) | |
| RANDY PFISTER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER AND OPINION

Plaintiff Michael Everett brought this lawsuit against defendants Warden Randy Pfister, two unknown staff members, and an unknown prison rape elimination liaison officer pursuant to 42 U.S.C. § 1983 and the Eighth Amendment. Everett alleges that defendants failed to protect him from an inmate that had a history of sexually molesting other inmates. Everett also brings an Eighth Amendment deliberate indifference medical care claim. Defendant Warden Randy Pfister has moved to dismiss Counts IV and V under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the Court grants defendant's motion to dismiss Count IV without prejudice and Count V with prejudice.

**Background**

The following facts are summarized from the complaint and taken as true for the purpose of deciding this motion. Everett is in the custody of the Illinois Department of Corrections and, during the relevant time period, was housed at the Northern Reception and Classification Center ("NRC") located at Stateville Correctional Center in Joliet, Illinois. Randy Pfister is the warden of the NRC and Stateville.

On June 23, 2018, NRC staff moved an inmate named "Joseph" into Everett's cell. Joseph made statements to Everett that led him to believe that he had a history of molesting other inmates. Moreover, Everett believed that Warden Pfister should have known about Joseph's history. That same day, Joseph rubbed his penis against Everett. Everett is a rape survivor, and, as a result, this event brought back old feelings of helplessness.

A few days later, Joseph requested that Everett massage him. When Everett refused, Joseph punished him by taking his food. Also, Joseph prevented Everett from completing any grievance forms because Joseph checked Everett's outgoing prison correspondence. Everett did not orally complain to prison staff about Joseph because he feared the staff would not believe him and that Joseph would retaliate. One day when Joseph had a healthcare appointment, Everett told a staff member that he needed to see a prison rape elimination liaison officer. The staff member and liaison officer recommended that Everett kick Joseph's ass, yet took Everett to see a medical doctor. According to Everett, the medical doctor had no interest in his health once he learned that Joseph had not penetrated him. The staff then moved Everett to a different prison cell.

On July 5, 2018, Everett met with a mental health provider for a regular follow-up appointment and revealed the incident involving Joseph. The medical provider diagnosed Everett with Post Traumatic Stress Disorder ("PTSD") and prescribed medication. Seven days later, Everett was released on parole, sent to Cook County Jail, and placed on house arrest. Everett did not have medical insurance when he was released, and thus was unable to take the medication prescribed for his PTSD. As a result, Everett turned to taking an illegal substance, Calotropin, to deal with his PTSD. On August 7, 2018, Everett overdosed on Calotropin in an attempt to commit suicide. After he was released from the hospital, Everett attempted suicide again.

Everett eventually sobered up, but was in violation of his parole and no longer living at his

house arrest address. After two months of self-medicating and hiding, police arrested Everett on October 14, 2018 and returned him to the NRC the following day. Everett was placed in a cell similar to the cell where Joseph molested him, which caused him to have flashbacks and triggered his PTSD. Everett requested to see a psychiatrist because he struggled to cope with his condition. He alleges that staff disregarded his requests. In early to mid-November, medical staff evaluated Everett during a routine follow-up appointment and prescribed Prozac for his PTSD and Remeron for his depression. In late November 2018, NRC medical staff discontinued Everett's Prozac prescription without explanation or authorization.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts all well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible when plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**Discussion**

In Count IV, Everett brings a failure to protect claim against Warden Pfister under the Eighth Amendment, which "obligates prison officials to 'take reasonable measures to guarantee the safety of ... inmates.'" *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018) (quoting *Farmer v. Brennan*,

511 U.S. 825, 832, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)). To establish a failure to protect claim, "an inmate must show that a defendant was deliberately indifferent to 'an excessive risk to inmate health or safety[.]'" *Sinn*, 911 F.3d at 419 (quoting *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015)). The deliberate indifference standard includes two components: (1) the harm must be objectively serious; and (2) the prison official must have actual knowledge of the risk. *Sinn*, 911 F.3d at 419. In addition, individual liability under § 1983 requires personal involvement in the alleged constitutional deprivation. *Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) ("Prison officials may satisfy the personal responsibility requirement of section 1983 if the conduct causing the constitutional deprivation occurs at the official's direction or with his or her knowledge and consent.").

The parties do not dispute that Everett's sexual molestation was an objectively serious harm under the first deliberate indifference prong, so the Court turns to the second prong of the deliberate indifference standard and the personal involvement requirement. Construing the facts in Everett's favor, his allegations do not give rise to a reasonable inference that Warden Pfister had actual knowledge of Joseph sexually molesting other inmates or that Warden Pfister was personally involved in the constitutional deprivation. To clarify, knowledge of a substantial risk of harm cannot be inferred from Everett's conversation with Joseph that led him to believe that Joseph had a history of molesting inmates. Everett does not allege that there was someone else listening to this conversation, such as a prison guard or another inmate, or that Warden Pfister was made aware of the conversation. Indeed, Everett only alleges that based on his conversation with Joseph, Warden Pfister *should* have known about Joseph's history of molesting other inmates. Meanwhile, Everett admits that he did not file an official prison grievance regarding Joseph nor did he verbally complain to prison guards out of fear that Joseph would retaliate. Everett does allege that he told a staff

4

member that he needed to see the prison rape elimination liaison officer. There are no allegations, however, that would link this request to Warden Pfister's actual knowledge. Likewise, that Everett saw a medical professional who was not interested in his molestation allegations does not raise a reasonable inference that Warden Pfister had knowledge of the risk of harm.

Without more, Everett has not adequately alleged Warden Pfister's actual knowledge of the risk of harm or that he was personally involved in the alleged constitutional deprivation. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). The Court therefore grants Warden Pfister's motion to dismiss Count IV without prejudice.

In Count V, Everett brings a *Monell* claim against Warden Pfister in his official capacity, including a failure to train claim. As Warden Pfister correctly asserts in his opening brief, the United States Supreme Court has unequivocally held *Monell* claims cannot be brought against States or state agencies based on the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."). Not only does the Eleventh Amendment bar Everett's claim for damages, he does not address Warden Pfister's argument in his response brief, thus waiving his claim. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016). The Court grants defendant's motion to dismiss Count V with prejudice.

**Conclusion**

Based on the foregoing, the Court grants defendant's motion to dismiss Count IV without prejudice and Count V with prejudice. [14]. The Court grants plaintiff leave to file an amended

complaint in accordance with this ruling keeping in mind counsel's Rule 11 obligations.  Plaintiff's amended complaint is due on January 6, 2020.

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Court Judge

DATED: 12/3/2019